IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CRIMINAL NO. 13-199 |
| | ) | |
| NATALIE MOSKORISIN | ) | |
| | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

1. The Government respectfully submits this Memorandum in Aid of the Sentencing of Defendant Natalie Moskorisin. The Government agrees with the probation officer that prior to any departure based on a motion filed by the Government, the sentencing range for Moskorisin is 10 to 16 months in prison, which falls in Zone C.

2. As outlined below, given the Defendant's lack of significant criminal history, the lack of forethought that went into the crime she committed, her acceptance of responsibility for her actions, and the lack of any inclination on Defendant's part to engage in violence, the Government is not seeking a sentence of incarceration for this crime, and instead believes that a sentence of probation could help Defendant steer clear of the drug addiction that led her to commit this crime in the first place.

3. On June 6, 2013, Defendant, acting together with Wesley Weaver, sent an email to potential witnesses, warning

them not to "snitch" in the case against David Best.  The email was sent from the Facebook account of David Best.  As Defendant probably agrees, this was an exercise in extraordinarily poor judgment on her part.  However, from the evidence collected by the Government, the Government believes that this crime was committed "spur of the moment" by Defendant and Weaver after they had consumed a few drinks.  This does not excuse what happened, but the Government does believe this lack of true malice should be considered by the Court at sentencing.

    4.    Further, the Government has no evidence that Defendant intended to follow-up on any of her threats with violence.  In that regard, the Government, especially in cases involving multiple cooperating witnesses, has no choice but to take seriously threats leveled against cooperating witnesses.  This is especially true where the threats came from the account of the person the cooperating witnesses were cooperating against (in this case, David Best).  While Defendant might have viewed what she did as a "joke" or a "prank" the Government assuredly does not.  Thus, law enforcement, on account of Defendant's threats, was forced to spend time and resources protecting the people who received the threats.  Indeed, the Government moved two of the victims of the threats into a hotel for a week.  With that said, however, there were no follow-up threats, and the

Government has no evidence to believe that Defendant intended to physically harm a witness in any way.

5. Prior to her arrest in this case, Defendant was subpoenaed to testify before the Grand Jury. The Government does not believe that Defendant lied, but does believe that Defendant withheld some critical evidence concerning who was at Hark's Place bar on the night of Christopher Radford's death. Further, prior to her testimony, Defendant deleted all the messages stored on her phone.

6. After her arrest, Defendant, after a few months, pled guilty and accepted responsibility. At that time, Defendant began to cooperate, and this cooperation continued through the time of David Best's trial. This behavior is further evidence that Defendant has accepted and agreed that her behavior was wrong, and that she wishes to move forward with her life and career.

7. Defendant has no criminal history, and she has not committed any additional criminal acts that the Government is aware of after her supervision began, other than the continued illegal consumption of opiates. All of these facts mitigate in favor of a non-incarceration sentence, particularly when coupled with the Government's motion.

8.  However, the Government notes that Defendant was, and will remain, an opiod and opiate addict.  Even after David Best's arrest, Defendant plotted with her friend Ryan Courneen (as discovered by the Government upon the search of Defendant's Facebook account) about taking over one of David Best's sources of supply, a drug dealer from New Castle.  Defendant, apparently, wanted to go into the drug distribution business with Courneen, although the Government has no information that Defendant acted on these desires.  Nonetheless, these messages indicate continued poor choices made by Defendant.

9.  Given this drug use and predilection to commit criminal activity associated with it, the Government believes that a significant period of probation of approximately three years is warranted in this case.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney


s/Eric S. Rosen
Eric S. Rosen
Assistant U.S. Attorney
U.S. Post Office & Courthouse
Suite 4000
Pittsburgh, PA  15219
(412)644-3500 (Phone)
(412)644-2645 (Fax)
eric.rosen@usdoj.gov
NY ID No. 4412326